EDMUND DUBS, an Infant, by Rudolph Dubs, his Guardian, ad litem, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant,

and

RUDOLPH DUBS, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant.

(195 N. W. 157.)

**Trial — special verdict must be complete, consistent and find all essential facts.**

1. A special verdict must be complete and consistent in and within itself. It must find all facts essential to sustain or defeat the cause of action in order to be sufficient to support a judgment.

**Trial — submission for special verdict not a waiver of right to challenge sufficiency thereof to support judgment.**

2. When a case is submitted to the jury for a special verdict, a party does-

---

Note.—(1) What special verdict must contain, see note in 24 L.R.A. (N.S.) 1; 27 R. C. L. 875.

not waive the right to challenge the sufficiency thereof to support a judgment on the ground that the verdict contains no finding upon a material controverted issue, although the questions submitted were agreed to by both sides, when the burden of proving such fact, whether it be as a part of the cause of action or defense, is upon the adversary.

**Appeal and error — special verdict not disclosing upon which of theories negligence was found held fatally defective.**

3. Where a special verdict contains questions upon two different theories of liability, one of which is unsound because it involves a breach of no legal duty owing to the plaintiff, and it cannot be determined upon which theory the defendant was found guilty of that negligence which the jury says was the proximate cause of the injury, the verdict is fatally defective.

**Trial — submission of immaterial question by agreement a waiver of right to object thereto.**

4. Where both parties agree that immaterial questions be submitted to the jury, the right to object thereto is waived and a reversal will not be ordered on that ground, unless the verdict, by reason of answers to immaterial questions, be thereby rendered wholly equivocal and indefinite so that it cannot be determined whether the jury found the existence or nonexistence of facts legally necessary to support a verdict.

Opinion filed August 20, 1923. Rehearing denied September 28, 1923.

Appeal and Error, 4 C. J. § 3039 p. 1056 n. 66. Trial, 38 Cyc. pp. 1919 n. 12; 1933 n. 41, n. 42.

Appeal from the District Court of Grant County, *Berry,* J.
Reversed.

*Young, Conmy & Young,* for appellant.

"Persons who thus use the tracks and right of way do so at their peril. They are trespassing upon dangerous premises, and assume the risk of any accident that may befall them by passing trains." Chesapeake & O. R. Co. v. Nipp (Ky.) 100 S. W. 246; Beiser v. R. Co. 92 S. W. 928; Krenzer v. R. Co. (Ind.) 43 N. E. 648; New York, N. H. & H. R. Co. v. Fruchter, 3 U. S. Sup. Ct. Rep. 38.

The defendant would have the duty only of exercising reasonable care to avoid injuring them if they were discovered in a place of peril. Poling v. Ohio R. R. Co. (W. Va.) 18 S. E. 782.

There is no ground for the argument that the plaintiff was invited upon the tracks. Temptation is not always invitation. Delaware,

L. & W. R. Co. v. Reich, 61 N. J. L. 635; Holbrook v. Aldrich, 168 Mass. 16; Romana v. Boston Elev. R. Co. 218 Mass. 76; Turess v. New York, S. & W. R. Co. 61 N. J. L. 314; Erie R. Co. v. Hilt, 247 U. S. 101; United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 66 L. ed. 615, 36 A.L.R. 28, 42 Sup. Ct. Rep. 299, 23 N. C. C. A. 264.

A greater duty must be exercised to avoid injury to a child discovered on a railroad track than to an adult; it can ordinarily be presumed that an adult will get off but there can be no such presumption in the case of a child. Generally on the duty toward trespassing children found on the track we cite: New York, N. H. & H. R. Co. v. Fruchter, 3 U. S. Sup. Ct. Rep. 38; McCarthy v. New Haven R. Co. 240 Fed. 606; Crawford v. R. Co. (Ga.) 33 S. E. 826; Thomas v. R. Co. (Iowa) 72 N. W. 783.

"The rule that the decision of the appellate court on a former appeal is the law of the case and decisive on a subsequent appeal is inapplicable where the facts presented on the subsequent appeal are materially different from those on which the decision was rendered." Adams v. Thornton, 90 Pac. 713.

"The question as to whether the court will reconsider upon a second appeal what has formerly been decided in the same case is addressed to the discretion of the court, and the decision of the court on a former appeal is not conclusive in a second appeal in which the evidence is the same." Speer v. Allen, 135 S. W. 232; Beiseker v. Moore, 174 Fed. 368 (8th).

It is deemed justifiable to vitiate the contributory negligence of the injured person himself where the injury was caused by one who perceived the danger and was able to avert it. Deny v. Railway (1909) 140 Mo. App. 461, 120 S. W. 134; De Norma v. Sioux Falls Tractor System (S. D.) 162 N. W. 746; Laughlin v. R. Co. (1910) 114 Mo. App. 185, 129 S. W. 1066.

*Jacobsen & Murray,* for respondent.

"Held, under the evidence, that the jury were justified in finding that the engineer of the defendant did see the boy in a place of peril, and did fail to exercise ordinary care to avoid injury to him, after discovering his position."

"It was the duty of the defendant to exercise ordinary care to avoid injury to the boy after discovering him to be in a place of peril. Fail-

ure to do so was wilful negligence." Dubs v. N. P. R. Co. 177 N. W. 888; Palon v. Great Northern R. Co. (Minn.) 151 N. W. 894; Acton v. Fargo & M. Street R. Co. 20 N. D. 434; Welsh v. Fargo & M. Street R. Co. 24 N. D. 463.

"A railroad company is bound to exercise a higher degree of care and watchfulness for the detection of trespassers on its track and the prevention of injury to them at points upon its track where people may be expected on the track or where the roadbed is used constantly by pedestrians, than it is required to observe with reference to trespassers generally or at other places and under different circumstances." Anderson v. Great Northern R. Co. (Idaho) 99 Pac. 91; Goonen v. Ann Arbor R. Co. (Mich.) 188 N. W. 363; Fike v. Pere Marquette R. Co. (Mich.) 140 N. W. 592.

"Whenever the defendant sees a plaintiff in danger, or by exercising only ordinary care in the discharge of his duty should discover such danger in time to advert an injury, and either fails, after discovering it, to take steps to avert it, or fails to discover the danger, the fact that the plaintiff's danger arose, in the first place, through his own negligence, does not prevent his recovery for an injury sustained." Cleveland, C. C. & St. L. R. Co. v. Means (Ind.) 104 N. E. 785.

"Regarding the testimony, it was sufficient in our opinion to take the case to the jury. When the defendant's engineer saw the plaintiff and his engine was a question of fact for a jury and the engineer's statement is not conclusive upon the proposition." Cahill v. Chicago, M. & St. P. R. Co. (Iowa) 121 N. W. 553.

"The appellant contends with much vigor that the record does not show that the defendant's trainmen actually saw the deceased in a place of danger. That may be true; however, the record does not show that the crane was in a place where it could be seen 500 feet up the track, that the steam was issuing from the top of the pipe leading from the engine." London Guarantee & Acci. Co. v. Southern P. R. Co. 200 Pac. 805.

"Where circumstantial evidence is of a nature from which it can be reasonably inferred that it contradicts direct testimony, the jury must determine the weight thereof." Paragraph 8 of syllabus:

"Where circumstantial evidence contradicting direct and positive

evidence is of sufficient strength to justify a reasonable inference by reasonable men that the fact in dispute is established thereby, the issue must be submitted to the jury." Victor v. Smilanich (Colo.) 131 Pac. 392.

"While in our opinion this evidence was candid and intelligent, it was still for the jury to say how much such conditions interfered with the vision of those in charge of the engine, and to find whether under all the circumstances and conditions, the horses were in fact discovered in time to have prevented the accident. They found that they were . . . seen soon enough so that the engineer might, by reasonable effort have avoided the collision. It is true the engineer and others upon the engine testified positively that they did not discover the horses until within 30 or 40 feet of them; but we are unwilling to say that even this unqualified statement might not be discredited by the jury if they believed from the evidence that surrounding circumstances and conditions made its truthfulness improbable." Corbett v. Great Northern R. Co. 28 N. D. 136.

"Upon a railroad company is imposed the duty of using all reasonable efforts to avoid injury to one who has accidentally placed himself in a position of danger, if the peril is known, or, by the exercise of reasonable care, might have been known." Riley v. Northern P. R. Co. (Mont.) 93 Pac. 948.

"That the engineer should have endeavored to stop the train when he first discovered an object on the track is also a question concerning which the jurors and other impartial minds might disagree." Corbett v. Great Northern R. Co. supra.

JOHNSON, J. This is an appeal from a judgment entered upon a special verdict in the district court of Grant county in the sixth judicial district, and from an order denying defendant's and appellant's motion for judgment notwithstanding the verdict or for a new trial.

The grounds of the motion are, in substance, that the plaintiff, Edmund Dubs, was a trespasser on the right of way; that the evidence of plaintiff's own witnesses shows that the boy was not discovered upon the track in a place of danger until the train was within 40 feet of him and that after such discovery every precaution was taken to

avoid injury; and that there is no negligence shown by the evidence on the part of the defendant company but that, on the contrary, the evidence shows that the plaintiff was guilty of contributory negligence.

This case was formerly before this court on appeal and is reported in Dubs v. Northern P. R. Co. 42 N. D. 124, 171 N. W. 888. The facts are fully stated in the former opinion and they are not substantially different in the case at bar. At the trial of the case now before us, the plaintiff called as his witness one H. H. Warren, the engineer of the defendant's train which ran over the plaintiff, and elicited from this witness in his own behalf testimony with reference to the accident. We do not deem it necessary to set out the facts in full, but shall refer to them merely as occasion requires in the course of the opinion.

This is a tort action. It is founded upon the theory that the defendant owed a legal duty to the plaintiff, which it failed, without lawful excuse, to perform; and that, because of such failure, the plaintiff suffered injury for which defendant should respond in damages. There can, of course, be no actionable negligence unless there be a failure to perform a legal duty owing to the injured party.

The plaintiff was injured while a trespasser upon the tracks of the defendant near New Leipzig in Grant county, this state. In the former opinion in this case, this court, speaking through its present Chief Justice, defined the legal duty which the defendant railroad company owed the plaintiff trespasser as follows:

"It was the duty of the defendant to exercise ordinary care to avoid injury to the boy *after* discovering him to be in a place of peril. Failure to do so was wilful negligence. . . .

"The fact that the boy was a trespasser on the tracks of the defendant railway, and that he was guilty of contributory negligence, did not absolve the defendant from its performance of this duty. It if failed to perform its duty in this regard, its negligence is deemed the proximate cause of the injury, while the boy's negligence is deemed the remote cause of it." (Italics are ours).

This court is, therefore, committed to the doctrine, applied as measuring the duty of landowners to trespassing human beings in O'Leary v. Brooks Elevator Co. 7 N. D. 554, 41 L.R.A. 677, 75 N. W. 919, and likewise held to define the duty of railroad companies in

cases of trespassing stock in numerous cases since, see Corbett v. Great
Northern R. Co. 28 N. D. 136, 148 N. W. 4, that the company owes
no duty to the trespasser until his presence in a place of danger be-
comes known, and that thereafter the measure of its duty is the ex-
ercise of ordinary care to avoid injuring him. Whether, and, if so,
under what circumstances and to what extent this somewhat severe
doctrine should be relaxed in cases of injury to children, who, because
of immaturity, are wholly unconscious of the danger of being upon
railroad tracks, it is not necessary now to decide, as the plaintiff
testified that he knew and understood that one remaining upon rail-
road tracks was in a place of danger and might be injured by passing
trains.

After this court, on the first appeal, had detailed the facts and
commented upon special interrogatories answered in connection with
a general verdict for the plaintiff, the court say:

*"There is, however, no special finding of the jury that the engineer
did in fact see the boy in time, after such discovery, to avoid the in-
juries. It is clear, therefore, under the evidence, that the doctrine of
last clear chance applied, if the engineer saw the boy at or about the
time he first saw the dog."*

The testimony in that trial as in this showed that the engineer first
saw the dog 200 or 300 feet away. It was claimed that the dog ob-
structed the view so that the engineer did not see the boy until the
dog jumped off the track. The evidence then, as now, showed, or
tended to show, that the engineer did not in fact see the boy until
about 40 feet away from him and that, immediately upon seeing him,
the brakes were put on and a good stop had, although not in time to
avoid injury. At the trial this time, the engineer testified specifically,
as a witness for the plaintiff, that he did not see the boy until about
40 feet from him, when the dog jumped up and left the track and that,
upon seeing the boy, he immediately put on the brakes, sanded the
rails and a good stop was obtained, some of the passengers being
thrown from their seats.

The court, in the former opinion, concluded by saying:

"The majority also deem it proper to suggest that, in the event
a new trial is ordered and had, special interrogatories ought to be

submitted to the jury upon the controlling questions of fact arising under the last clear chance doctrine."

From the opinion on the former appeal, it is clear that this court felt that in order to support a verdict against the defendant, the jury would have to find, as a fact, that the engineer "did in fact see the boy in time, *after such discovery,* to avoid the injuries;" and that upon this question the court was of the opinion that a special interrogatory, in the event of a new trial, should be submitted to the jury, in order to determine whether the defendant was guilty of actionable negligence.   According to the holding on the first appeal, the jury would have to find, as a fact, when the engineer first discovered the plaintiff upon the track in a place of peril and then to determine, as a fact, that after such discovery the defendant negligently failed to use ordinary care in avoiding injury to the plaintiff.   This court refused to hold, altho such a finding was necessary in order to justify the general verdict in that case, that the jury found, or intended to find, that the engineer saw the boy in time to avoid injuring him, but negligently failed to stop the train in time.   Accordingly, a special finding on this point was suggested by this court.

Twenty-three interrogatories were submitted to the jury on the trial of the instant case, but no question required them to find when or at how distant a point the engineer discovered the plaintiff upon the track, or whether he discovered him in time to avoid injuring him in the exercise of ordinary care.   The following interrogatories, and no others, bearing upon this question, were submitted:

(8.) "Did the engineer of the train which ran over the plaintiff Edmund Dubs, before running over the said Edmund Dubs, discover the said Edmund Dubs to be in a position of peril on the railroad track?   A.   Yes."

(9.) "Did the said engineer, after discovering the said Edmund Dubs to be in a position of peril on the railroad track, fail to exercise ordinary care to avoid injuring him, the said Edmund Dubs?   A. Yes."

It is contended by the respondent that the answers to the foregoing interrogatories sufficiently find controlling questions of fact arising under the doctrine of last clear chance as directed in the former opinion.   In order to determine this question, it becomes necessary to

consider whether or not there is any evidence in the record which will support the answer to question number nine. In the former opinion, this court said:

"There is no dispute in the evidence that the brake appliances were in fine working order and that a *fine emergency stop was accomplished* when some 30 to 35 feet away from the boy. . . . It was so good that passengers were thrown out of their seats. . . .

"Necessarily from the special findings made, the jury, pursuant to the instructions of the court in this regard, must have found, to support the general verdict rendered, that the engineer did see the boy about the time he first saw the dog (about 200 or 300 feet away) and in time to have avoided the injuries sustained by the exercise of ordinary care."

The testimony at this trial is the same as to the precautions taken by the engineer and the train crew after the moment of time when the engineer said he saw the boy on the track. On the former trial, and at this trial, there is not a syllable in the record that indicates that any precaution was omitted or that the train crew failed to do anything that should have been done in order to effect a speedy stop, after the engineer saw the boy in a position of peril, namely, when the train was about 40 feet from the boy. If, therefore, in answering question number nine affirmatively, the jury found, or intended to find, as a fact that the engineer did see the boy before the train was within approximately 40 feet of him, and when 200 or 300 feet away, it is doubtful if such a finding is supported by substantial evidence and can be sustained. The case, therefore, is in no better condition than when it was here before. In fact, it is perhaps less favorable to the plaintiff because we now have the clear and unequivocal testimony of his own witness, the engineer, that he did not see the boy until about 40 feet from him. In the former opinion this court said that while there was some evidence which might support a finding that the engineer did see the boy in time to avoid the injuries, the court nevertheless said it had a "doubt if the jury did in fact so find or had any intention of so doing." Neither the evidence nor any finding in this case justifies a conclusion on this point different from that on the first appeal. If this court, in the former appeal, could not let the general verdict stand because the court doubted if the jury found or intended to find wilful

negligence, tho it did find in answer to a special interrogatory that the dog did not so obstruct the engineer's view as to prevent his seeing the boy, it is difficult to see on what theory the verdict on this trial can be supported. The fact that certain special findings, upon immaterial matters, hereinafter referred to, were made by the jury, renders it even more doubtful than it was on the first trial whether the jury intended to find that the engineer saw the boy in time to avoid injuring him. Indeed, to sustain this judgment, we would, in effect, be required to say, although the jury does not say so, that the jury believed the engineer saw the boy two or three hundred feet away, but took no precaution whatever to stop the train and avoid running over him until within about 40 feet from the place where the boy was lying on the track. We are not disposed to say that this engineer wilfully managed his train in such a way as to inflict wanton injuries upon this plaintiff. It was upon this very point that this court in the first opinion suggested a special finding should be made by the jury. In view of this direction by this court on the first appeal, it is difficult to understand why a specific finding was not made on this controlling question. There is, therefore, no finding in the special verdict upon a material issue of fact. A special verdict must be "complete and consistent in and within itself." It must find all facts essential to sustain or defeat the cause of action in order to be sufficient to support a judgment. Clementson, Special Verdicts, 45. "Silence in respect to an essential fact not specially found or necessarily included in the verdict is equivalent to an express finding against such party." Clementson, Special Verdicts, pp. 267, 268. Such a verdict is defective and the defect is not waived by failure to object to the questions submitted or to ask the submission of other questions. Jenewein v. Irving, 122 Wis. 228, 99 N. W. 346, 903; Clementson, Special Verdicts, p. 200. Defendant was not required to assume or anticipate that the jury would answer any question contrary to the evidence.

The answer to question number six of the special verdict found defendant guilty of want of ordinary care in running over the plaintiff and the answer to question number seven found that such want or ordinary care was the proximate cause of the injury. It is contended that these answers sufficiently establish defendant's liability. We do not think so. Under the doctrine of liability adopted in the first opin-

ion in this case, defendant might be guilty of want of ordinary care in not seeing the plaintiff in time to stop the train, and yet not be liable. The test and the only test of liability in this case is: Did the defendant use ordinary care, not in maintaining a lookout for trespassers, but in avoiding injury to the plaintiff *after* discovering him in a position of peril? Under the circumstances and theory of liability here involved, these answers do not find ultimate facts sufficient to support a judgment for the plaintiff.

It is contended that all defects in the questions submitted were waived by defendant and York v. General Utility Corp. 44 N. D. 51, 176 N. W. 352, recently decided by this court, is cited. In that case the court says that counsel owe a duty to the trial court and cannot refuse assistance and permit error in order to take advantage thereof later. No general rule is there laid down that controls over the facts here.

In the case at bar, the parties seem to have agreed that there should be a special verdict and the form of the questions seems to have been agreed upon by counsel as well, except three or four questions which need not be considered. We think the correct and reasonable rule is that a party does not waive the right to challenge the sufficiency of the special verdict to support a judgment on the ground that a question upon a material fact was not submitted when the burden of proving such fact, whether it be as a part of the cause of action or defense, is upon his adversary. A broader rule would impose on one party to the lawsuit an affirmative duty as to the manner of conducting the litigation on the other side. The burden of proving when the engineer first saw the boy and that, after seeing him, he failed to use ordinary care to avoid the injury, rested on plaintiff and under the circumstances the defendant should not be held to have waived the right to challenge the sufficiency of the findings upon facts material to the plaintiff's cause of action. The situation is analogous to that arising when the special verdict fails to find upon a material fact and the same rule should be applied as to the responsibility for the effect of such failure. See Boulger v. Northern P. R. Co. 41 N. D. 316, 322, 171 N. W. 632.

There is another defect in the special verdict to which, for guidance in the event of another trial, we call attention and which, in some jurisdictions, would be held fatal unless waived. As said before, this

court, on the former appeal, defined the last clear chance doctrine as applied to the case of trespassers upon railroad tracks. Under this definition there is no duty on the carrier to maintain a lookout or to anticipate that trespassers will be upon the tracks, but its legal duty begins only *after* discovering the trespasser in a position of peril. There were submitted, notwithstanding this rule of liability, several interrogatories to the jury upon the theory that if the defendant failed to exercise ordinary care in maintaining a lookout so as to discover the presence of the plaintiff upon the tracks in time to avoid injuring him, the defendant was guilty of actionable negligence. Questions 11, 17 and 18 sufficiently illustrate this theory:

(11.) "Should the said engineer in the exercise of ordinary care have *known that the plaintiff* was in a position of peril in time to avoid injuring him by the exercise of ordinary care?" A. "Yes."

(17.) "Did the engineer after discovering an object on the track, fail to exercise ordinary care to determine whether or not said object was a human being so that he could have avoided injuring the plaintiff, Edmund Dubs?" A. "Yes."

(18.) "Was the want of ordinary care of the defendant and its servants, including the engineer, the proximate cause of the plaintiff, Edmund Dubs' injury, and Rudolph Dubs' damages?" A. "Yes." Assuming that questions 8 and 9 were sufficient upon the ultimate fact, under the last clear chance doctrine as defined by this court in the former opinion, the plaintiff, in the interrogatories quoted, numbers 11, 17 and 18, in submitting to the jury the question of defendant's liability for failure to use ordinary care in discovering the presence of the plaintiff upon the tracks, asked the jury to find facts that were immaterial and upon another and essentially different theory of liability, which was unsound under the facts in this case. The jury found, in answering question 18, that the want of ordinary care of the defendant's servants was the proximate cause of the injuries and awarded damages accordingly. Want of ordinary care, with reference to what legal duty? This question follows number 11, which, by implication at least, suggests that want of ordinary care in maintaining a lookout for trespassers under the circumstances here constitutes actionable negligence. It is not unreasonable to suppose, since the jury had no instruction from the court as to the law on this point, that the jury,

having answered number 11 in the *affirmative,* found in number 18 that *the lack of care suggested in number* 11 was the proximate cause of the plaintiff's injury, rather than the failure of the defendant to use ordinary care to avoid injuring plaintiff after discovering him in a position of peril. From the special verdict, it is impossible to say whether the jury had in mind want of ordinary care in stopping the train after discovering the plaintiff's position of peril, or want of ordinary care in maintaining a lookout. If the latter was the case, there was no liability because there was no such legal duty owing the plaintiff—though implied in these questions and the jury might well have inferred therefrom that such duty was legally owing—under the circumstances and the rule laid down in the prior opinion of this court. The court did not instruct the jury in connection with any question submitted, or otherwise, as to any phrase of the last clear chance doctrine. This is a case where it was undoubtedly confusing to the jury and dangerous to the plaintiff to shoot a double barrelled gun. The verdict is indefinite. There is no way to determine upon which theory the jury found the defendant guilty of that negligence which it says was the proximate cause of the injury. Under such circumstances, a special verdict has been held to be fatally defective. Reffke v. Patten Paper Co. 136 Wis. 535, 117 N. W. 1004. Our statute on special verdicts is substantially the same as that of Wisconsin.

We do not order a reversal on this ground, however, for the reason that the defendant waived the objection by agreeing in advance that such immaterial questions might be submitted to the jury. Lathrop v. Fargo, M. Street R. Co. 23 N. D. 246, 254, 136 N. W. 88; Gerhardt v. Swaty, 57 Wis. 24, 14 N. W. 857; Schultz v. Chicago, M. & St. P. R. Co. 48 Wis. 375, 4 N. W. 402. This does not alter the fact that the special verdict, in view of the answer to question number 9, is equivocal and it cannot be determined whether recovery was allowed on the only theory of liability on which a verdict for plaintiff could be sustained.

The judgment of the trial court is reversed and a new trial ordered.

Birdzell and Nuessle, JJ., concur.

Christianson. J. (concurring). I concur in the opinion prepared

by Mr. Justice Johnson. The personal injuries involved in this action were sustained in July, 1912, but the action was not instituted until in April 1917, or nearly five years after the injuries were sustained. (The companion case,—instituted by the father to recover for the loss of service of his son and moneys expended in furnishing medical treatment,—was not instituted until June 17, 1918.)

The first trial of this action was had in June, 1917, and resulted in a general verdict in favor of the plaintiff in the sum of $3,000. The trial court, however, set the verdict aside and ordered judgment in favor of the defendant notwithstanding the verdict. An appeal was taken, and, in an opinion written by the present Chief Justice, this court held that the defendant was not entitled to judgment on the merits as a matter of law, and that consequently the trial court erred in ordering judgment notwithstanding the verdict. This court, however, did not reinstate the judgment but ordered that a new trial be had so as to enable the parties to submit to a jury the questions of fact on which liability depends. The opinion of this court in the most unmistakable terms indicated that, under the undisputed facts in the case, the defendant was liable only by application of the "last clear chance" or "discovered peril" doctrine. In other words, this court ruled that the defendant was liable only in case the jury found as a fact that the engineer actually saw the boy in time, so that by the exercise of reasonable care and prudence, he could have stopped the train and avoided injuring the boy.

In the opinion the court said:

"The sole question in this case, requiring our attention, is whether upon the record, and the verdict of the jury actionable negligence of the defendant is shown through its failure to avoid injury to the boy after discovering him to be in a position of peril. . . .

"It was the duty of the defendant to exercise ordinary care to avoid injury to the boy after discovering him to be in a place of peril. . . .

"The fact that the boy was a trespasser on the tracks of the defendant railway, and that he was guilty of contributory negligence, did not absolve the defendant from its performance of this duty.

"The jury, upon special questions submitted found that the boy was negligent in lying on the railway track, that he was there asleep just before the accident occurred, and that the engineer's view was not ob-

structed by a dog lying on such track so that he could not see the boy in time to stop the train.    .    .    .

"Necessarily from the special findings made, the jury, pursuant to the instructions of the court in this regard, must have found, to support the general verdict rendered, that the engineer did see the boy about the time he first saw the dog and in time to have avoided the injuries sustained by the exercise of ordinary care.   This court is not prepared to say as a matter of law, that the jury were not warranted in so finding under the evidence.   The jury did find that the dog did not obstruct the view of the engineer so that he could not see the boy. *There is, however, no special finding of the jury that the engineer did in fact see the boy in time after such discovery, to avoid the injuries. It is clear, therefore, under the evidence, that the doctrine of last clear chance applied, if the engineer saw the boy at or about the time he first saw the dog.*

"The majority of the court are of the opinion that there is some substantial evidence upon which the jury might base a finding that the engineer did see the boy in time to avoid the injury.   But they doubt if the jury did in fact so find, or have any intention of so doing.   This is especially so in view of the finding of the jury that the boy had been asleep, which finding was contrary to the testimony of the boy.   Accordingly a majority of the court are of the opinion that the judgment should not be reinstated, but that the case should be remanded for further proceedings upon the motion for a new trial.   *The majority also deem it proper to suggest that, in the event a new trial is ordered and had, special interrogatories ought to be submitted to the jury upon the controlling questions of fact arising under the last clear chance doctrine."*

The case was thereafter tried in the district court in May, 1919, and submitted to the jury in conformity with the views expressed and the directions given in the decision of this court.   The case was submitted to the jury for a special verdict.   The findings of the jury on the controlling question involving the application of the last clear chance doctrine were as follows:

Question No. 5.   Did the engineer or fireman actually see the boy on the track in time, by the exercise of ordinary care, to stop the train and avoid injuring him?

50 N. D.—12.

Answer.   No.

Question No. 6.   Did the trainman wilfully and negligently fail to stop the train after the presence of the boy on the track was actually and in fact known to them?

Answer.   No.

Judgment was entered in favor of the defendant upon such special verdict.   Thereafter, plaintiff made a motion for a new trial which was denied by the trial court.   Later plaintiff made a second motion upon the ground that the stenographer's notes had been lost, or stolen. This motion was granted.   On appeal this court held—that the loss of the stenographer's notes did not constitute a ground for a new trial, and that consequently the trial court erred in granting such motion, 47 N. D. 210, 181 N. W. 606.   Thereafter, plaintiff brought an action in equity and obtained a new trial under the rule announced in Bruegger v. Cartier, 20 N. D. 72, 126 N. W. 491.   The third trial was had in June, 1922.   On this trial, the case was again submitted to the jury for a special verdict.   Judgment was entered thereon in favor of the plaintiff.   Defendant moved for judgment notwithstanding the verdict or for a new trial.   The motion was denied and it has appealed from the judgment and from the order denying its motion for judgment notwithstanding the verdict or for a new trial.

On this appeal defendant asserts that the trial court erred in its instructions to the jury; that the evidence is not sufficient to support some of the controlling findings; that improper and inconsistent questions were submitted; and "that the special verdict is not sufficient to justify the judgment entered here, in that there is no finding in the special verdict that the peril of the boy was discovered in time to stop the train."   I will consider the last stated contention.   The others have been so fully and ably discussed by my brother Johnson that I could add nothing to what he has said.

As has already been indicated, in the decision of this court on the first appeal it was ruled that liability on the part of the defendant existed only in case the engineer actually saw the boy on the track in time to stop the train and avoid injuring him.   And it was suggested that upon a retrial of the case special interrogatories be submitted to the jury "upon the controlling questions of fact arising under the last clear chance doctrine."   In discussing the basis of the "last clear

chance" doctrine, Ruling Case Law says:—"The basis of recovery in this case as in others is the defendant's superior knowledge of the peril. It has been said that the ground upon which a plaintiff may recover, notwithstanding his own negligence, is that the defendant, after becoming aware of the danger to which the plaintiff was exposed, failed to use a proper degree of care to avoid injuring him. In many of the cases the defendant's conduct is characterized as having been 'wilful,' 'wanton,' or 'reckless,' but very plainly there need have been no express intention to inflict an injury. *The defendant's knowledge however, must have been actual knowledge; he is not to be held liable upon proof that he ought to have discovered the plaintiff's perilous situation for such proof does not establish superior knowledge of the peril. It is what the defendant did or failed to do after acquiring knowledge of the plaintiff's peril that constitutes the breach of duty."* 20 R. C. L. pp. 141, 142.

It is obvious therefore that the pivotal question of fact in this case is: "When did the engineer first see the boy on the track?" Or stated otherwise, "How far was the locomotive away from the boy at the time the engineer actually saw the boy and became aware of his presence on the track?" For manifestly it is only after this fact is established that an intelligent inquiry can be conducted into the further question whether after such discovery the engineer could, by the exercise of due care, have stopped the train and avoided injuring the boy.

It will be noted that upon the second trial the jury was specifically asked to find whether the engineer actually saw the boy on the track in time so that, by the exercise of ordinary care, he might have stopped the train and avoided injuring him; also, whether the trainmen wilfully and negligently failed to stop the train after the presence of the boy on the track was actually known to them. The jury answered both of these questions in the negative. But, upon the third trial, that is, upon the trial involved on this appeal, no question was submitted embodying the specific proposition of whether the boy was discovered by the engineer in time so that he might have stopped the train and avoided the injury. In fact, the questions submitted on the trial involved on this appeal seem to have been framed so as to avoid this very specific proposition. It is contended by the respondent that Questions 8 and 9, submitted upon the last trial, covered the element whether the

engineer actually discovered the boy in time so that the injury might have been avoided. It seems to me that this contention is unwarranted. Questions 8 and 9 and the answers returned thereto, are as follows:

"Question No. 8. Did the engineer of the train which ran over the plaintiff, Edmund Dubs, before running over the said Edmund Dubs, discover him, the said Edmund Dubs, to be in a position of peril on the railroad track?

"Answer. Yes.

"Question No. 9. Did the engineer after discovering the said Edmund Dubs to be in a position of peril on the railroad track fail to exercise ordinary care to avoid injuring him, the said Edmund Dubs?

"Answer. Yes."

It will be noted that by question No. 8, the jury merely found that the engineer discovered Edmund Dubs to be in a position of peril on the railroad track before the train ran over him. There was no need of submitting this question to the jury. The court might well have directed the jury to answer this question in the affirmative. At no time has the engineer denied that he saw the boy in a position of peril on the railroad track before the train ran over him. On all three trials, the engineer has testified that he did see him when the locomotive was about 40 feet away. Hence, manifestly, under the evidence, only one answer could be returned to this question, i. e., an answer in the affirmative. The question, however, did not inquire as to when the engineer discovered Edmund Dubs upon the track. If it is true, as the engineer testified, that he first discovered the boy, Edmund Dubs, when the locomotive was only about 40 feet away, then concededly, there is no liability in this case. The answer which the jury returned to question No. 8, is just as consistent with the idea that the engineer first saw the boy when the locomotive was only about 40 feet away, as that he discovered him when the locomotive was 200 or 300 feet away. Hence, in so far as question No. 8 is concerned, it is manifest that it, and the answer thereto, in no manner covers the controlling question of fact involved in this case.

But respondent contends that the jury, in answering question number 9 in the affirmative, must have found that the engineer saw the boy in time, so that by the exercise of ordinary care, he could have stopped the train and avoided injuring him. It seems to me that this conten-

tion is also wholly unfounded. Question number 9 did not involve the element of time, that is, it did not involve, or ask the jury to consider, whether the engineer actually saw the boy in time so that he could have stopped the train and avoided injuring him. The question merely asked the jury to pass judgment upon the acts of the engineer after he discovered the boy upon the track. It is elementary that the following three elements are essential to actionable negligence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure on the part of the defendant to perform that duty; and (3) injury resulting to the plaintiff as a result of defendant's breach of duty. The absence of any one of these three elements renders a complaint bad, or the evidence insufficient. 29 Cyc. pp. 419, 420.

It is well settled that a special verdict must contain findings in favor of the party having the burden of proof upon every material fact in issue between the parties. Boulger v. Northern P. R. Co. 41 N. D. 316, 171 N. W. 632. Hence, in an action like this where damages are sought to be recovered for personal injuries claimed to have been occasioned by the negligence of the defendant, and there is a conflict in the evidence or the conclusions which may be drawn therefrom, the special verdict in order to justify a judgment in favor of the plaintiff must contain findings of ultimate facts in favor of the plaintiff as to all the three essential elements above mentioned.

It is conceded that there was no duty on the part of the defendant to keep a lookout. In other words, defendant's duty towards the plaintiff first sprang into existence when the engineer actually saw the boy upon the track. Hence, defendant here is liable only in case: (1) the engineer after discovering the boy failed to exercise the required care to avoid injuring him; and (2) the negligence of the engineer *after discovering the boy* occasioned the injuries for which compensation is sought to be recovered in this action.

To justify a judgment in favor of the plaintiff here, it is not sufficient that the special verdict contains a finding that the engineer was negligent in his acts after he discovered the boy upon the track, but there must further be an express finding to the effect that such negligence,—that is, the negligence after discovering the boy upon the track,— is the proximate cause of the injuries for which compensation

is sought. For negligence alone does not constitute a cause of action. A negligent act becomes actionable only when it is the proximate cause of injury sustained by some one to whom the defendant owed a duty which was violated by such negligent act. It will be noted that question No. 9 involves only the first proposition, i. e., that of the failure to exercise care after the discovery of plaintiff's peril, and it, in no manner, involves, or requires a finding upon, the second question, i. e., whether the breach of that duty was the cause of plaintiff's injuries. In other words, it does not involve, or require the jury to find, whether the engineer saw the boy *in time* so that, by the exercise of care, the injury might have been avoided.

Not only was no question submitted involving this element, but, as pointed out in the opinion prepared by Mr. Justice Johnson, there was submitted to the jury a number of other questions implying that the defendant was required to keep a look-out. These questions coupled with the instructions given could hardly have failed to confuse the jury. It may, also, be mentioned that the court wholly failed to instruct on the burden of proof. While it does not impress me that the failure to give such instruction constitutes prejudicial error, in the absence of request therefor, in Nygaard v. Northern P. R. Co. 46 N. D. 1, 178 N. W. 961, the trial court ordered a new trial principally on the ground that it had failed to instruct on the burden of proof. The ruling of the trial court in the Nygaard Case was sustained by this court in an opinion written by the present Chief Justice. If there was error in failing to instruct on the burden of proof in the Nygaard Case, it is difficult to see why that would not also be true here. In the Nygaard Case, the jury made findings on controlling questions against the party having the burden of proof, while in this case the findings which it is said justifies a judgment in favor of the plaintiff were in favor of the party having the burden of proof.

On the record as a whole I am of the opinion that a situation is presented where this court can neither affirm the judgment, nor order a dismissal of the action. In other words, I believe that it is the duty of this court to remand the case for a new trial.

BRONSON, Ch. J. (dissenting). Over eleven years ago, in July, 1912, the plaintiff, then a mere lad of nine years, suffered the loss of

an arm and leg through being run over by defendant's train. This is the third time that this case has been here. Dubs v. Northern P. R. Co. 42 N. D. 124, 171 N. W. 888, id. 47 N. D. 210, 181 N. W. 606. The law of the case was laid down in the first appeal decided over four years ago. . In a manner it is a reproach upon the administration of justice that litigation should be thus prolonged. In the case at bar a special verdict was rendered upon questions concerning which both parties agreed. If the questions submitted to the jury were too many or upon immaterial or improper matters, defendant is not in a position to complain or to predicate error upon the submission to and the answer by the jury of such questions. The jury specifically found that the engineer of the train, before running over the plaintiff, discovered him to be in a position of peril on the track and, after discovering him to be in a position of peril, failed to exercise ordinary care to avoid injuring him. In other words the jury have found specifically in favor of the plaintiff upon specific interrogatories which this court in the first appeal suggested should be submitted to the jury. The answers to these questions support a liability under the law of the case as announced in the first decision. The majority opinion now finds the evidence to be insufficient to support such specific findings. In other words, pursuant to the majority opinion, that it is more doubtful now upon the record and the specific questions as answered by the jury whether the jury intended to find that the engineer saw the boy in time to avoid injuring him; that is to say, that the jury believed that the engineer saw the boy some 200 or 300 feet away. But the particular inquiry should be directed toward the question whether there is evidence to support the specific findings of the jury with reference to the application of the last clear chance doctrine. Generally speaking, the record discloses that on the day when the boy was injured the sun was shining and the vision of the engineer ahead was unobscured. The engineer had a clear, straight track ahead and he was looking forward all the time. He saw a small object in the center of the track ahead of him. At the time he did not know what it was. He will not say it was 400 feet or 700 feet. It was some distance away. He kept watching that object. When he got about 200 or 300 feet away he saw it was a dog. It was lying on the track cross-wise and did not move. When he was about 40 feet away the dog jumped up. He saw then

that there was a boy there. From the time he discovered the dog lying cross-wise on the track until it moved the engineer kept his eyes on it. The engineer testifies that he did not see the boy there at all until the dog got off the track; that the dog was in front of the boy and close to him. There is testimony otherwise in the record that the dog was a pup six or seven months old, about a foot long and ten or eleven inches in height; that the dog was lying asleep on the track about a foot north of the boy; that the boy was stretched out between the rails, beside the dog, with one forearm and hand upraised and his head resting thereupon; his head was up the distance from his elbow to his hand which was almost ten inches; the boy was playing there in the dirt or sand. Manifestly, the jury were warranted upon the evidence in finding that the engineer did, in fact, see the boy when he claims that he first saw the dog; assuredly, the evidence warrants the finding that the boy's form offered a larger object of perception and one more readily seen, than the dog's form.

I am of the opinion that the evidence in the record, above stated merely in a general way, is sufficient, together with the surrounding circumstances as introduced in the evidence, to support the finding of the jury that the engineer did see the boy and failed after discovery, to use reasonable care to avoid injuring him. Palon v. Great Northern R. Co. 129 Minn. 101, 151 N. W. 894.