Hulda **WERTH**, Plaintiff and Appellant,

v.

**ASHLEY REALTY COMPANY**, a corporation, Defendant and Respondent.

Civ. No. 8825.

Supreme Court of North Dakota.

July 27, 1972.

Gordon O. Hoberg, Napoleon, for plaintiff and appellant.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant and respondent.

ERICKSTAD, Judge.

The plaintiff Hulda Werth, an adult woman of about 54 years of age, commenced this action against defendant Ashley Realty Company, a corporation, by complaint dated October 13, 1971, in which she alleged: the corporation was the owner of certain lots in the City of Lehr, North Dakota, on which was situated a building with an outside basement entrance, to which entrance there was attached an iron-pipe railing; on July 2, 1969, the plaintiff stopped to talk with one Willie Koepplin and while so talking with Mr. Koepplin she leaned against said railing, which collapsed, causing her to fall backward into the basement stairwell; the railing was dangerous and defective and this condition was known to the defendant, or the defendant should have known of the condition, and the defendant's failure to give warning or to repair said condition constituted negligence; as a result of the defendant's negligence the plaintiff was permanently injured and is, accordingly, entitled to recover the sum of $71,827, together with interest from the date of the injury, plus costs.

The corporation filed an answer in which it admitted the ownership of the lots and the occurrence of the accident on its premises and in which it alleged that if the plaintiff was injured the injuries were solely and proximately caused by the plaintiff's own negligence or that her negligence proximately contributed to her injuries.

On January 24, 1972, the corporation made a motion for a summary judgment under Rule 56 of the North Dakota Rules of Civil Procedure based upon the pleadings, a deposition of the plaintiff, an affidavit of an officer and agent of the defendant corporation, and affidavits of three employees of the corporation. In resistance to this motion, the plaintiff filed two affidavits, one signed by Willie E. Koepplin, an employee of the Lehr Hardware & Supply Store, and the other signed by Donald G. Kranzler, the owner and operator of that store.

Mr. Koepplin asserts that on the date in question he was working on an old deep-freeze [on a vacant lot situated between the Lehr Hardware & Supply Store and the bank building owned by the corporation]; that while plaintiff was talking to him about the deepfreeze she leaned against the handrailing of the bank building and fell into the stairwell; that the pipe of which the handrailing was made was in "very poor shape" and had been in that condition for a year or more; that on at least one occasion one end of the railing had fallen to the ground and had merely been placed back into position unrepaired.

Mr. Kranzler asserts that he is the owner of the Lehr Hardware & Supply Store; that he knew from looking at the handrailing surrounding the stairwell of the corporation's building that it was in. "poor shape" at the time of the plaintiff's accident; that before the accident he noticed that the handrail was in poor shape and that on one occasion it had fallen to the ground and merely been replaced without being repaired; that he witnessed the accident, having just driven to the scene in his pickup when the plaintiff leaned against the railing and fell into the stairwell.

By affidavit, an officer of the corporation asserts that the building to which the stairwell and railing had been attached had not been used for any commercial purpose since July of 1968, and that no agent, officer, or employee of the corporation had any actual knowledge prior to the plaintiff's accident of a defective condition of the railing.

In another affidavit an employee of the defendant corporation asserts that during the time that he was the manager of a bank operated on the defendant's premises, from 1963 to 1967, and apparently while he was manager of an insurance company operated on the premises, from 1967 to 1968, the railing surrounding the stairwell appeared to be in good condition and that he was not made aware of any defects or irregularities in the railing, and that on one

occasion he used the railing for the purpose of supporting a plank on which he stood to service an air-conditioner located in the bank building, and that at that time the railing supported his weight very easily.

Another affidavit filed on behalf of the defendant corporation was signed by a person who said that from March 1, 1950, until November 1, 1965, he had been employed as assistant manager and teller of the bank which was operated on the corporation's premises and that during that period of time he had also done some janitorial work for the bank, and that all during that time the railing surrounding the stairwell appeared to be in good condition, and that he had never been notified or made aware of any defects in the railing.

The plaintiff admits that she was on the defendant's premises for the purpose of securing the old freezer from Mr. Koepplin for her son. No contention was made in the trial court and none is made in this court that she was on the defendant's premises for any purpose or interest of the defendant.

On this record the trial court granted the motion for summary judgment, orally stating that the owner of property owes no duty to a licensee other than to refrain from willfully or wantonly injuring him.

In its written order granting the motion, the trial court found that the plaintiff was not an invitee but that she was a trespasser or a bare licensee on the premises of the defendant at the time of the accident; that there was no dispute as to any material fact; that there was no genuine issue as to any material fact; and that the complaint failed to state a claim upon which relief could be granted.

In appealing from the summary judgment entered pursuant to the trial court's order, the plaintiff has filed specifications of error which we summarize: (1) That the court erred in concluding that there is no genuine issue as to any material fact;

(2) That the court erred in failing to recognize the "trap exception" to the general rule of nonliability on the part of a landowner to a licensee for an injury caused by defective condition of the premises; (3) That the court erred in concluding that the landowner's duty of care varies in accordance with whether the injured person is an invitee, a licensee, or a trespasser, and that the correct rule is whether the defendant used ordinary care in the management of his property.

Pertinent to a determination of the first specification of error are the following parts of Rule 56.

" * * * Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. * * *" Rule 56(c), Rules of Civil Procedure, N.D.C.C.

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e), Rules of Civil Procedure, N.D.C.C.

The plaintiff concedes that nothing in her deposition or in any of the affidavits supports the allegation in her complaint that the dangerous and defective condition of the handrailing was known to the defendant corporation.

It is apparently the plaintiff's contention that the facts as set forth in the affidavits disclose that the condition was such that in the exercise of reasonable care the defendant corporation should have known of the dangerous and defective condition or that,

if there was an issue as to that fact, that question should have been submitted to the jury.

Before we attempt to determine the merit of this contention, we must answer certain questions bearing upon its materiality.

(1) What duty does a landowner have to protect a person who comes upon his premises uninvited?

(2) If he owes no duty generally to an uninvited person, does this case involve exceptional circumstances which would impose a duty upon him which if not carried out would make him liable for injuries proximately caused by that failure of duty?

In 1898 this court denied recovery to an eleven-year-old boy, who, with his uncle whose sight was defective, had entered upon the premises of an elevator company and, in attempting to extricate his uncle's cane from under a whirling shaft which connected the engine of the elevator to the machinery in the elevator, was caught by a protruding and almost invisible end of a wire which had been wrapped around the shaft. In that case this court said:

"It is a fundamental principle of law that 'the absolute right of every man to use his own property as he pleases for all purposes to which such property is usually applied, provided he exercises proper care and skill to prevent any unnecessary injury to others, is unlimited and unqualified up to the point where the particular use becomes a nuisance.' Fisher v. Clark, 41 Barb. 329. It is equally true that a landowner owes no duty of protection to a trespasser, at least up to the time when the trespass is known. In other words, he is under no legal duty to keep his premises in such condition that they may be trespassed upon with safety to the trespasser, provided their condition does not unnecessarily invite injury." O'Leary v. Brooks Elevator Co., 7 N.D. 554, 75 N.W. 919, 921 (1898).

"* * * But actionable negligence is simply a failure to exercise that diligence and skill that was imposed by some legal duty. In City of Indianapolis v. Emmelman, 108 Ind. 530, 9 N.E. 155, it is said: 'The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed.' And Judge Mitchell says, in Akers v. [Chicago, St. P., M. & O.] Railway Co., 58 Minn. 544, 60 N.W. 670: 'Actionable negligence is a failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if the defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie. The duty must be due to the person injured.' " O'Leary v. Brooks Elevator Co., *supra*, 75 N.W. 919, 921.

Eighteen years later this court reaffirmed the position taken in *O'Leary* by denying recovery to a man who had fallen into an excavation on property owned by a bank on a Sunday evening when the bank was closed after he had previously informed the assistant cashier of the bank that he would later stop by the bank to pick up a check that was to be left at the bank by one of his oil customers.

In that case the court said:

"At the most, plaintiff was a mere licensee, to whom defendant owed no duty. Furthermore, plaintiff did not visit the bank building on this Sabbath evening to transact business with defendant, nor had he any right to assume that the bank would be open for the transaction of business at that late hour. He was not invited by the defendant to go there, but concededly went on a personal errand in no way concerning defendant bank, and consequently, as before stated, the latter owed him no duty. This being true, it follows that defendant was guilty of no negligence." Costello v. Farmers' Bank of Golden Valley, 34 N.D. 131, 157 N.W. 982, 983 (1916).

The statute pertinent to this case reads:

"9–10–06. Willful acts and negligence—Liability.—Every one is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive." N.D.C.C.

In discussing this section's predecessor, which was identical, this court in a 1926 decision said that Section 5948 of the Compiled Laws of North Dakota, 1913, was declaratory of the common law.

In a decision rendered in 1949, in discussing the duty of a landlord to keep premises in a reasonably safe condition for the use of tenants and their invitees, as distinguished from licensees, this court said:

"The question of the defendant's negligence with respect to the plaintiff involves the plaintiff's legal status upon the premises at the time of his injury. If the plaintiff was a mere licensee the defendant owed him no duty other than to refrain from willfully and wantonly inflicting injuries upon him. Costello v. Farmer's Bank, 34 N.D. 131, 157 N.W. 982; Colbert v. Ricker, 314 Mass. 138, 49 N.E.2d 459, 147 A.L.R. 647; 38 Am. Juris., Negligence, sec. 104." Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505, 510 (1949).

The law as our court has stated it appears to be in accord with the great majority of cases in this country. Encyclopedia law is to this effect:

"Mere licensees are about the least favored in law of men who are not actual wrongdoers. It has been stated that an owner or occupant owes one whom he permits to enter for the latter's convenience no duty except not to harm him willfully or wantonly, or to set traps for him, or to expose him to danger recklessly or wantonly. * * *

"* * * No duty is imposed by law on an owner or occupant to keep his premises in a safe condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come thereon, although their entry is permitted by the owner or occupant. Active vigilance is not required on the part of the property owner to see that his premises are kept safe for the benefit of licensees." 38 Am.Jur. Negligence § 104, p. 765, and § 105, pp. 767, 768.

Other writers state the general rule as follows:

"The most usual statement of the general rule, sometimes expressed by statute, is that no duty exists toward a mere, bare, or gratuitous licensee, or licensee by permission, except to refrain from willfully or wantonly injuring him, or, as otherwise stated, to refrain from injuring the licensee through such gross negligence as is equivalent to willfulness or wantonness, or to abstain from inflicting intentional, wanton, or willful injuries, or to refrain from willfully, intentionally, or recklessly injuring the licensee, or to abstain from the doing of any intentional, willful, or wanton acts or misconduct, endangering the safety of the licensee." 65 C.J.S. Negligence § 63(32), pp. 692, 693.

■ In the instant case, the plaintiff appears to come within the category of a trespasser or a mere licensee. Even the plaintiff concedes, in light of the afore-described cases, that if we are to apply in this case the law that we have applied in the past, which distinguishes duty on the basis of whether the plaintiff is a trespasser, a licensee, or an invitee, she cannot recover unless the circumstances of this case bring it within the "trap exception".

A discussion of the "trap exception" as contained in Corpus Juris Secundum follows:

"Liability for injury to a licensee may be predicated on negligence in leaving something in the nature of a trap or pitfall at a place where his presence might have been anticipated, without a warning thereof, although there was no intention to cause any injury. The owner or occupant owes a duty to the licensee not to set or maintain traps or pitfalls on the premises for him. The duty of the owner or occupant not to injure a licensee willfully or wantonly includes the obligation not to lay for him or permit to exist pitfalls or mantraps in which it may be reasonably anticipated he will become ensnared. The owner or occupant must not create an entrapment to the danger of a licensee unless he discloses its existence or warns against its hazards.

"A 'trap' has been defined as a danger which a person who does not know the premises could not avoid by reasonable care and skill, a hidden danger lurking on the premises which may be avoided if known. The word 'trap' as now used generally means any kind of a hidden dangerous condition. A trap involves a concealed danger; an obvious danger is not a trap. Various conditions, situations, or obstructions have been held not to constitute a trap. However, in some cases hidden dangers, such as traps, pitfalls, and obstructions, have been held to mean dangers of that character arising through the active, and not the passive, negligence of the owner or occupant." 65 C.J.S. Negligence § 63(39), pp. 711, 712, 713.

█ What is involved in this case is more akin to what the text writers call a "hidden peril" than a "trap".

█ Pertinent is the following:

"In accordance with the general rule discussed supra § 63(32), an owner or person in charge of premises ordinarily is not under any affirmative duty to give licensees warning of concealed perils, although he might, by the exercise of reasonable care, have discovered the defect or danger which caused the injury. However, he owes a duty not knowingly or willfully to let the licensee run into, or expose him to, a hidden danger or peril, but should take whatever steps are reasonable, under the circumstances, to protect the licensee from such peril, and accordingly should give to the licensee a reasonable warning, or information regarding the dangerous condition, which is not open to the licensee's observation but of which the owner or occupant knows or should know. In case of failure of this duty, the owner or proprietor may be held liable for unusual concealed perils against which the licensee cannot protect himself, and this liability is predicated, not on the existence of the concealed danger, but on the failure to give warning of its existence." 65 C.J.S. Negligence § 63(39), pp. 713, 714.

We think especially pertinent what the supreme court of Oregon said in a 1965 decision in which it overruled an earlier decision standing for the proposition that the occupier of land has a duty to a licensee to warn of the danger which he could have known by the exercise of reasonable care.

In that case, the plaintiff, a sixty-year-old woman, who was a social visitor at the home of the defendants, her son and daughter-in-law, in using the back step, consisting of a block of wood laid on the ground, to avoid the several steps leading down to the ground from the front porch, suffered injuries when she stepped down upon the block and it tipped with her, throwing her to the ground. She contended that the block consisted of a trap or concealed danger.

In discussing this contention, the court said:

"Defendants in this case were not shown to have had any knowledge of the

propensity of the block to tip. They had been using such blocks for the same purpose for years. They could not warn of that which they did not know, and they owed no duty to the plaintiff to inspect to see if the block did tip." Fleck v. Nickerson, 239 Or. 641, 399 P.2d 353, 355 (1965).

In discussing a quotation contained in an earlier decision, from 65 C.J.S. Negligence § 38, p. 504, relative to the duties of the occupier of land to a licensee, the Oregon supreme court said:

"'Should know,' in our opinion, as used there, does not mean those things which the occupier of land could know as the result of the exercise of reasonable care in inspecting the premises but rather those things that he should infer or deduct from facts or circumstances that are already known to him." Fleck v. Nickerson, *supra*, 399 P.2d 353, 355.

■ In the instant case, it is conceded that no facts have been stated proving that the defendant knew of the dangerous condition of the railing. It is our view that no facts have been stated from which the defendant could have inferred that the railing was dangerous.

Pertinent also is a statement of law in *Fleck* as follows:

"A licensee must take his chances as to any defective condition unknown to the occupier, and is entitled at most to a warning of dangers that are known." Fleck v. Nickerson, *supra*, 399 P.2d 353, 355.

See Prosser on Torts, 3rd ed., § 60, page 388, and cases collected at 55 A.L.R.2d 536. See also Prosser on Torts, 4th ed., § 60, Licensees, page 376.

We conclude that the trial court was correct in granting the motion for summary judgment, as no facts were stated establishing that the defendant knew or should have known that the dangerous condition existed.

■ It remains for us to consider one further contention of the appellant and that is that the law which this court has applied in the past and which it applies in this decision is outdated as indicated and best explained by the supreme court of California in Rowland v. Christian, 69 C.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L. R.3d 496 (1968).

In *Rowland* the plaintiff alleged in his complaint that about November 1, 1963, Miss Christian told the lessors of her apartment that the knob of the cold-water faucet on the bathroom basin was cracked and should be replaced; that on November 30, 1963, plaintiff entered the apartment at the invitation of Miss Christian; that he was injured while using the bathroom fixtures, suffering severed tendons and nerves of his right hand; and that he had incurred medical and hospital expenses, and permanent injury. He further alleged that the bathroom fixtures were dangerous, that Miss Christian was aware of the dangerous condition, and that his injuries were proximately caused by her negligence.

Miss Christian, in her answer, generally denied the allegations and specifically alleged that plaintiff was a social guest. She admitted that she had told the lessors that the faucet was defective and that it should be replaced.

The plaintiff's injuries occurred when the handle or knob broke as he attempted to turn off the faucet. Neither the complaint nor the answer indicates whether the crack in the faucet handle or knob was obvious or concealed.

Under these circumstances, the California court, after quoting Section 1714 of the Civil Code, which is identical with Section 9–10–06, N.D.C.C., asserted: California cases have occasionally stated that all persons are required to use ordinary care to prevent others from being injured as a result of their conduct; exception should be made to the fundamental principle enunciated by Section 1714 only when clearly supported by public policy; a departure

from that principle involves a balancing of a number of considerations; the California court and other courts had departed from the fundamental concept that a man is liable for injuries caused by his carelessness in regard to the liability of a possessor of land for injuries to persons who had entered upon that land; this departure had been accomplished by classifying the plaintiff either as a trespasser, licensee, or invitee, and then adopting special rules as to the duty owed by the possessor to each of the classifications; exceptions have been found to the general rule limiting liability, which include the active-negligence exception and the trap exception; and the common-law distinctions have been repudiated by the jurisdiction of their birth (Occupiers' Liability Act 1957, 5 and 6, Eliz. 2, Ch. 31). With that background, the court declined to follow and perpetuate the classifications.

It stated the rule that it would apply, as follows:

"The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." Rowland v. Christian, *supra,* 443 P.2d 561, 568.

It is interesting that notwithstanding this action the majority opinion in *Rowland* recognized that the same result could have been reached by carving out exceptions to the traditional rules.

In the instant case, we recognize that exceptions to the general rule of non-liability do exist. We have, however, decided that none is applicable under the facts of this case. We prefer to retain the categories and make exceptions to the general rule when necessary.

We draw some support for our position from Justice Burke's dissent in *Rowland.*

"In determining the liability of the occupier or owner of land for injuries, the distinctions between trespassers, licensees and invitees have been developed and applied by the courts over a period of many years. They supply a reasonable and workable approach to the problems involved, and one which provides the degree of stability and predictability so highly prized in the law." Rowland v. Christian, *supra,* 443 P.2d 561, 569.

Until we are otherwise convinced of the need for change, we decline to follow *Rowland.* We are not unmindful of the excellent annotation entitled "Premises Liability—Claimant's Status", 32 A.L.R.3d 508, which points out a number of states have followed *Rowland,* or lean in that direction, but we are of the opinion that until additional time has elapsed in which experience can be gained in California, Hawaii, Colorado, and other states which may have abandoned the distinctions based upon the status of the entrant upon the land, we should not abandon those distinctions which in our state have been reasonably useful in the past.

We note at present no great trend in the *Rowland* direction. Mion Construction Company v. Rutledge, 123 Ga.App. 777, 182 S.E.2d 500 (1971); Cook v. Demetrakas, 275 A.2d 919 (R.I.1971); Osterman v. Peters, 260 Md. 313, 272 A.2d 21 (1971); Arbogast v. Terminal Railroad Assn. of St. Louis, 452 S.W.2d 81 (Mo.1970); Engel v. Friend's Hospital, 439 Pa. 559, 266 A.2d 685 (1970); Brewer v. Annett, 86 Nev. 700, 475 P.2d 607 (1970).

The supreme court of Ohio in a recent case, when asked to abandon the distinctions based upon the status of the visitor, had this to say:

"Finally, we are urged in this case to eliminate distinctions based upon the status of a visitor upon the premises and to adopt a rule of ordinary care under all

the circumstances as the measure of the duty of a landowner or landoccupier. This court, however, is convinced that a just measure of judicial restraint requires that this question be deferred to a later day and to another case." Di Gildo v. Caponi, 18 Ohio St.2d 125, 247 N.E.2d 732, 736 (1969).

Accordingly, the judgment of the trial court is affirmed.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.