Willie Mae FRANCIS, Plaintiff-Appellant,

v.

Laddie PIC, Defendant-Appellee.

No. 9058.

Supreme Court of North Dakota.

Feb. 27, 1975.

Burke, Hodny & Burke, Grafton, for appellant.

DePuy, Fair & O'Connor, Grafton, for appellee.

SAND, Judge.

Willie Mae Francis, plaintiff/appellant, a social guest of the lessee, brought this action against defendant/appellee Pic, landlord, for personal injuries sustained from a fall on the inside stairway of a one-family home. Pic inspected the house three or four times prior to purchasing it, and walked up and down the stairway leading from the first to the second floor during these inspections. Pic again, after the purchase, made an inspection and "skipped" over the stairway several times going up and down and noticed the steps were worn and showing wear. The inspections took place during the day and at night. Pic made a determination that the house was in a liveable condition and that it was reasonably safe. Pic purchased the home on approximately October 1, 1971, and about five or six days later rented it to the lessee. The fall occurred on November 26, 1971, at about 5:15 a. m. Plaintiff, Francis, a social guest, was staying overnight with her stepdaughter and son-in-law (lessee). Plaintiff and her husband used the upstairs bedroom. In the morning, while in the process of descending the stairway barefooted, she fell. Plaintiff felt her foot give way under her and had a sensation of the steps going out from under her. She fell on step No. 5 which showed a cracked nosing, part of which was an old break and part of which was new. The treads varied from eight to nine and one-half inches in depth. The nosing on step 2 just below the second floor level was missing, and on step 8 it was partially missing. On step 1 the nosing varied from one-eighth to three-eighths inch. The slope of the stairway was steep and about four or five degrees steeper than the maximum steepness of a standard residential stairway. The width of the stairway was three inches less than a standard minimum. The stairway opening on the second floor level leading downstairs consisted merely of a floor opening without any door, walls or railings. There were no mats on the stairway and the surface of the stairway was painted with enamel, not

fresh but shiny and slick. The artificial lighting of the stairway consisted of a ceiling light on the second floor not in direct line with the stairway. It illuminated the upper treads but the light was cut off by the stairwell, and about half way down the stair there was no illumination, except for reflection and indirect lighting. The plaintiff social guest was not acquainted with the stairway except for going upstairs and descending for the first time.

Testimony was introduced showing that in walking up a stairway the weight is normally on the main part of the tread inside the nosing, whereas on descending the foot placement and weight is almost entirely on the nosing.

The case was tried to a jury, but the court restricted the case to the issue of liability. At the conclusion of plaintiff's case the court heard the motion of defendant, made pursuant to Rule 50, North Dakota Rules of Civil Procedure, and over objection of the plaintiff granted a directed verdict of dismissal with prejudice on the grounds that no legal theory supported a recovery for plaintif. Plaintiff appeals from the order of dismissal.

The issues raised by the plaintiff/appellant are:

(1) What duty of care does a landlord of a house owe a social guest of the tenant (lessee)?

(2) Did the trial court err in holding as a matter of law that the defendant landlord owed no duty of care to plaintiff?

(3) Did the evidence raise issues of fact that should have been submitted to the jury?

Upon examination of the record, the briefs, and the oral arguments, it is apparent to us the district court, as well as the parties, gave erroneous consideration to the case of Werth v. Ashley Realty Company, 199 N.W.2d 899 (N.D.1972), which is readily distinguishable from this case.

It is also apparent the district court granted the motion for a directed verdict of dismissal upon the misapprehension of the Werth case wherein the plaintiff was a hybrid licensee-trespasser; whereas in this case we have a social guest. This illustrates the difficulty of attempting to render justice in every case by relying upon and attempting to fit the facts into the rigid common law categories of invitee, licensee and trespasser under the common law liabilities of landlord and tenant.

Presumably because of this difficulty a number of States, a small minority, have abandoned the common law distinctions of persons on premises and related concepts of liability. 32 A.L.R.3d 508. The abandonment has been more pronounced where minor children suffered bodily injury. 20 A.L.R.3d 1127. In this instance the injured person, the plaintiff, is an adult.

█ The plaintiff in this case urged this court to abandon the common law rules of liability and adopt the rules of reasonable care as stated in Sargent v. Ross, 113 N.H. 388, 308 A.2d 528 (1973). However, because there are recognized exceptions to the general common law rule which are applicable to the present case we do not deem it advisable at this time to abandon the general common law concepts of liability of landlords. The social guest of a lessee of a single-dwelling home, we believe, deserves reasonable consideration especially as to notice of dangerous conditions or perils. A social guest is closely identified with the tenant.

█ This court, in Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505 (1949), recognized or acknowledged that the status of an invitee of a tenant was the same as that of the tenant in upholding a disputed or contested jury instruction, which was as follows:

"The guest or invitee of a tenant is so identified with the tenant that his right of recovery for injury as against the landlord is the same as that of the tenant, if such invitee suffers injury."

█ This instruction and concept is in harmony with Restatement of the Law,

Torts (Second) § 358, which states, in relevant part, as follows:

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."

A social guest clearly comes within the expression, "and others upon the land with the consent of the lessee."

Relevant comments on the foregoing Restatement of the Law, Torts (Second) § 358, are:

"a. The rule stated in this Section is an exception to the general rule of non-liability of the lessor for dangerous conditions existing at the time of the lease, as stated in § 356. It is analogous to the rule as to vendors stated in § 353.

"b. In order for the rule stated in this Section to apply, it is not enough that the dangerous condition of the land is one which might be discovered by a reasonable inspection of the premises. The lessor is under no duty to his lessee, or to any other person entering the land, to make such an inspection, except where premises are leased for a purpose involving the admission of the public, as stated in § 359.

"It is not, however, necessary that the vendor have actual knowledge of the condition, or that he be in fact aware that it involves an unreasonable risk of physical harm to persons on the land. It is enough that he has reason to know that the condition exists, as that phrase is defined in § 12(1)—that is, that he has information from which a person of reasonable intelligence, or of his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and in addition would realize that its existence will involve an unreasonable risk of physical harm to persons on the land.

"The lessor must also have reason to believe that the lessee will not discover the condition, or that he will not realize the risk. The lessor is under no duty to warn the lessee of a condition which he reasonably believes that the lessee will discover, or of the extent of the risk involved in an obvious condition, unless he should realize that the lessee is unlikely to appreciate it."

■ The terms "reason to know" and "should know" are defined in Restatement of the Law, Torts (Second) § 12, as follows:

"(1) The words 'reason to know' are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

"(2) The words 'should know' are used throughout the Restatement of this Subject to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists."

The comment on § 12 is as follows:

"a. Both the expression 'reason to know' and 'should know' are used with respect to existent facts. These two phrases, however, differ in that 'reason to know' implies no duty of knowledge on the part of the actor whereas 'should

know' implies that the actor owes another the duty of ascertaining the fact in question. 'Reason to know' means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. 'Should know' indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty. Both the phrases 'reason to know' and 'should know' are used throughout the Restatement of Torts in the same sense as they are used in the Restatement of Agency. (See Restatement of Agency, Second, § 9.)"

The rule of law as stated in § 358, *supra,* has been recognized and applied in numerous jurisdictions. In 49 Am.Jur.2d Landlord and Tenant, § 788, page 737, the following is found:

> "If, however, the landlord is, at the time of the letting, aware of the dangerous or unhealthful condition of the premises arising from latent defects, it is his duty to disclose such fact, and his failure to do so or his concealment thereof may constitute fraud or negligence which not only renders him liable to the tenant or his invitees for resulting injuries, but also enables the tenant to escape liability for future rents if he abandons the possession."

This rule in substance has been applied with minor variations in Johnson v. O'Brien, 258 Minn. 502, 105 N.W.2d 244 (1960), involving a stairway, wherein the court noted that the rule has been recognized and cited in Am.Jur., 1 Tiffany, Landlord and Tenant, § 966; Prosser, Torts (2d ed.) § 80; and in 52 C.J.S. Landlord and Tenant § 417. See also, Freitag v. Evenson, 232 Or. 225, 375 P.2d 69 (1962); Cummings

v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963), wherein the court said, " * * * he [landlord] is under the duty to take those precautions for the safety of the tenant [by giving notice] as would be taken by a reasonably prudent man under similar circumstances"; and Matthews v. Spiegel, 385 Pa. 203, 122 A.2d 696 (1956).

This rule has been criticized in Sargent v. Ross, *supra,* as not going far enough, but under the facts in this case we are constrained to work within the exemption rather than abandon the entire common law concept.

The rule of law as stated in Restatement of Law, Torts (Second) § 358 is applicable to this case. We are assuming, in the absence of testimony to the contrary, that the lease was on the usual thirty-day basis.

We also examined certain statutory provisions but found they are not significantly helpful in this instance.

This court, in Newman v. Sears, Roebuck and Company, 77 N.D. 466, 43 N.W.2d 411 (1950), said that Sections 47–16–12 and 47–16–13, N.D.C.C., gave new remedies to the tenant against the landlord but did not otherwise alter the tort liability of a landlord to the tenant under the common law rules of liability.

We have also examined Section 9–10–06, N.D.C.C., but do not find it particularly helpful because the language as it existed at the time of the accident was construed by this court in Ferm v. Great Northern Ry. Co., 53 N.D. 543, 207 N.W. 39 (1926), to be declaratory of the common law, except to note that this law is in harmony with the proposition that the use to which property is put has a material bearing as to which rule of law should be applied. In passing, we should note that this section was amended in 1973 along with the adoption of the comparative negligence law, which may require a re-examination of prior analyses and constructions of this section. It could well constitute a harbinger of change. In this instance the property was to be used,

and in fact was used, as a single-family dwelling. It is natural to assume that any stairway in a family dwelling is fit for its designed purpose and will be used by the tenant, including occasional guests.

■ The question whether or not the lessor knew or had reason to know of the cracked nosing on step No. 5 and that it might be dangerous to the tenant or his social guests is a question of fact which should have been decided by the jury. Also, any other questions of fact having any bearing on negligence should have been submitted to the jury.

The social guest of the tenant stands in a position similar to the tenant with reference to the landlord or lessor.

■ Based on the record before this court, we conclude that the general rule of law stating that the lessor of land is not liable to his lessee or others on the land for physical harm caused by any dangerous condition which existed when the lessee took possession is not applicable, but rather the rule as set out in § 358, *supra,* applies.

The *Werth* case, decided in 1972, with reference to abandoning the common law distinctions, quoting approvingly from another case, said that it "is convinced that a just measure of judicial restraint requires that this question be deferred to a later date and to another case." The passage of time has not presented an opportunity to re-examine the common law conception nor have cases been presented which would be suitable for such re-examination. We do not at this time find it appropriate or necessary to further re-examine the common law definitions and rules of law as they may apply to licensees, invitees and trespassers.

The plaintiff urged this court to adopt the nuisance theory and hold the landlord liable for the damages sustained by the social guest on the concept that the cracked nosing constituted a nuisance. Just as one swallow does not make a summer, neither does one cracked nosing constitute a nuisance per se. However, failure to give no-tice of the cracked nosing may constitute negligence, as stated in § 358, Restatement of the Law, Torts (Second) *supra.* We do not find that the facts in this case warrant a finding that a nuisance existed.

The conclusions reached herein are adequately dispositive of the issues raised.

■ We conclude that the district court erred in granting the motion for a directed verdict of dismissal. The case is therefore reversed and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and VOGEL, PEDERSON and PAULSON, JJ., concur.