Helen O'LEARY, Plaintiff-Appellant,

v.

Ed COENEN, Defendant-Appellee.

Civ. No. 9279.

Supreme Court of North Dakota.

March 10, 1977.

Lashkowitz, Lashkowitz & Schneider, Fargo, for appellant; argued by John T. Schneider, Fargo.

Conmy, Rosenberg & Lucas, Bismarck, for appellee; argued by A. William Lucas, Bismarck.

PAULSON, Judge.

This is an appeal from the judgment of the district court of Eddy County dated May 10, 1976, dismissing with prejudice the complaint of the plaintiff, Helen O'Leary [hereinafter Mrs. O'Leary].

Only one issue is raised for our consideration: whether this court will continue to use special categories (e. g., invitee, licensee, trespasser) in premises liability actions, or whether we will abandon such categories and will adopt a single standard of reasonable care and foreseeability for such actions in place of such categories.

This case arose as the result of Mrs. O'Leary's being bitten on February 18, 1975, by the dog of the defendant, Ed Coenen [hereinafter Mr. Coenen] when Mrs. O'Leary was on the Coenen farm premises. Mrs. O'Leary, an insurance sales agent, was in the company of another insurance agent, Lyle Nesemeier, who had driven her to the Coenen farm for the purpose of trying to sell Mr. Coenen an insurance policy. No prior contact had been made with Mr. Coenen by Mrs. O'Leary, Mr. Nesemeier, or the insurance company which they represented. Mrs. O'Leary's arrival at the Coenen farm was based solely on information which she had previously obtained from a plat book which she had in her possession. Her presence there was unannounced, unexpected, and uninvited.

Mrs. O'Leary testified that at the time she arrived at Mr. Coenen's farmyard there were various vehicles parked in his yard and, as a result, she was unable to determine whether anyone was at home. There were no signs posted or other indications which would have signaled the presence of a dog. Mrs. O'Leary testified that after she got out of Mr. Nesemeier's car, but before

she reached the Coenen farm home, Rover, Mr. Coenen's pet dog, lunged through the front door of the farm house, chased her back toward the car, and then bit her on her left leg. Mrs. O'Leary also testified that while she was attempting to escape from Rover, she dropped her eyeglasses and broke them. The dog bite necessitated sutures and she was given medication to relieve her pain. Mrs. O'Leary expended the sum of $129.67 for the medical attention she required and for the repair of her broken eyeglasses. Mrs. O'Leary's associate, Mr. Nesemeier, was the only other witness to the incident.

Mr. and Mrs. Ed Coenen had left their farm unattended on February 18, 1975. Mr. Coenen testified that he had left Rover inside the farm house, but he also testified that Rover could get out of the house in two ways, namely, if someone opened the outer door for him, or, occasionally, by Rover's scratching at the bottom of the door and pulling the door open with his paw. Mr. and Mrs. Coenen both testified that they had no reason to believe or to suspect that Rover would bite anyone.

Rover was twelve years old at the time of the trial. The Coenens had owned Rover since he was a pup. Rover stood approximately eighteen inches high and weighed approximately thirty-five pounds in February of 1975. Mr. Coenen testified that he used Rover, not as a watch dog, but to assist him in the care and herding of his 75 head of cattle and 80 head of sheep. Mr. Coenen further testified that he had no personal knowledge that Rover had ever bitten any children or hired help or any other unannounced persons (e. g., gas or United Parcel delivery personnel). Mrs. Coenen testified that, several years previously, she had heard that Rover had bitten Mr. Coenen's brother once when he attempted to enter the Coenen home at a time when no one was at home (none of the surrounding circumstances of such incident are contained in the record).

The trial court concluded from these facts that, at the time of the incident, Mrs. O'Leary's presence at the Coenen farm placed her in the category of being a "bare licensee" on such premises. The trial court thus determined, in paragraphs 3 and 4 of its conclusions of law:

"3.

"That defendant [Mr. Coenen] owes no duty to a bare licensee, other than not to harm her wilfully or wantonly, or to set traps for her, or to act in such a grossly negligent manner as to constitute wilfullness or wantonness.

"4.

"That no act or omission on the part of the defendant is such as to establish any liability on the part of the defendant to the plaintiff [Mrs. O'Leary]."

This court recently considered the same issue raised herein, in *Sendelbach v. Grad,* 246 N.W.2d 496 (N.D.1976), in which case the parties did not brief or argue the question of abandonment of the use of the common law categories. In *Sendelbach, supra,* this court adhered to the use of the common law categories in premises liability actions in a manner consistent with our opinion in *Werth v. Ashley Realty Company,* 199 N.W.2d 899 (N.D.1972), by applying the "hidden peril" exception to the licensee category.[1] The "hidden peril" exception requires that the possessor of land, once having notice of the "hidden peril", owes a duty not to knowingly expose a licensee to such peril, in addition to holding the possessor of land to the traditional standard of care owed a licensee—not to willfully, wantonly, or intentionally cause or inflict injury upon a licensee or his property. *Sendelbach v. Grad, supra* 246 N.W.2d at 501; *Werth v. Ashley Realty Company, supra* 199 N.W.2d at 904; 65 C.J.S. *Negligence* § 63(38), p. 710.

In the instant case, this court is asked to eliminate the use of the common law cate-

---

1. Three members of this court, in a special concurrence to *Sendelbach, supra* 246 N.W.2d at 502, advocated that the common law distinctions between licensees and invitees be aban-doned in favor of a rule that reasonableness of the conduct of owners and possessors of land under all circumstances be adopted as the proper test for determining liability.

gories in premises liability actions and to adopt a single standard of reasonable care and foreseeability. We now undertake, as we indicated we would do in *Werth, supra* 199 N.W.2d at 907, to reexamine recent developments in the law of premises liability to determine whether North Dakota should continue its use of the common law categories with exceptions where necessary, as in *Sendelbach v. Grad, supra* ; or whether we should abandon such distinctions, based upon the status of a visitor, and adopt a single standard of reasonable care and foreseeability under all the circumstances as the measure of the duty of a landowner or landoccupier.

The use of common law categories of entrants upon land to determine the degree of care owed to such entrants by an occupier of premises has recently been substantially modified or totally abandoned in many jurisdictions. We note eight jurisdictions which have abandoned the use of the common law categories as the sole method of determining the degree of care owed by an occupier of premises to entrants upon his premises.[2] Such jurisdictions now hold that an occupier's liability to one injured upon his premises is governed by a standard of reasonable care under the circumstances, taking into consideration the foreseeability of the entrant's presence, the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury to him. Such jurisdictions assert that they have not made an occupier an insurer of his property, or required him to endure unreasonable burdens to maintain his property. Reasons cited for abandoning the common law categories include: (1) that the policy considerations that led to the judicial creation of invitee, licensee, and trespasser immunities no longer retain their viability under modern conditions because such categories bear no logical relationship

to the exercise of reasonable care for the safety of others, because, in today's society, human safety is of greater importance than is a land occupier's unrestricted freedom, and because public opinion today favors assigning enterprise liability or distributing losses over a greater segment of society through insurance in lieu of forcing the entrant to suffer such burden; (2) that it is becoming increasingly difficult to categorize the circumstances of modern life into the rigid common law classifications of invitee, licensee, and trespasser (our recent decision in *Sendelbach v. Grad, supra,* is a good example of how definitive such a determination can be); (3) that the use of common law classifications prevents a jury from applying changing community standards to the duty owed by an occupier of premises to entrants thereon (i. e., *Werth v. Ashley Realty Company, supra,* where a local jury could well have found possessors of premises located in or near urban areas which the public frequents to be under a higher standard of care than the possessors of rural property); (4) that jury confusion sometimes results over the inclusion of social guests, no matter how formally invited, in the licensee category and not the invitee category; and (5) that the many exceptions and distinctions make the use of the common law categories complex, confusing, inequitable, and, paradoxically, nonuniform—a brief listing of some of the exceptions and distinctions complained of would include: discovered and undiscovered trespassers; owner and nonowner cases; nonowners using the premises for their own convenience and nonowners acting on the owner's behalf; active negligence (i. e., dangerous activities) and passive negligence (i. e., dangerous conditions); dangerous conditions obvious to the owner and those not obvious to the owner; child trespassers;

---

2. *Ouellette v. Blanchard,* 364 A.2d 631 (N.H. 1976); *Cates v. Beauregard Elec. Cooperative, Inc.,* 328 So.2d 367 (La.1976); *Scurti v. City of New York,* 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975); *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S. App.D.C. 86, 469 F.2d 97 (1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399; *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *See* Annot., 32 A.L.R.3d 508 (1970).

frequent use of limited area exception; technical trespassers; social guests; implied licensee; business visitor; and trapped trespassers. As was noted in *Scurti v. City of New York, supra,* 387 N.Y.S.2d at 59, 354 N.E.2d at 798:

" . . . the factors which sustained the landowner's immunity and inspired the exceptions under prior law will no longer be considered decisive. But, as indicated, most of them have some probative value and to that extent they will continue to have some relevance in determining whether, under all the facts and circumstances, there has been a breach of duty."

We next note a group of five jurisdictions which have eliminated the distinction between licensees and invitees, while at the same time, retaining the common law category of trespassers.[3] Such jurisdictions contend that there is a significant difference between the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right. These jurisdictions have also noted that the exceptions necessary for the effective use of the trespasser category have been well defined in case law and appear to be adequate (i. e., known trespassers, child trespassers, attractive nuisances, and inadvertent trespassers). Such jurisdictions no longer determine status as a licensee or invitee to be controlling, but, rather, determine it to be only one factor, among many, to be considered in determining a landowner's duty owed to entrants upon his premises under ordinary standards of negligence. In addition to the entrant's status, the foreseeability or possibility of harm; the duty to inspect, repair, or warn; the reasonableness of inspection or repair; and the opportunity and ease of repair or correction of possible hazards, are all factors to be considered in assessing liability.

Six jurisdictions have limited their modification of the common law categories to the elevation of social guests into the invitee category or have established special standards of care for social guests.[4] Such jurisdictions have retained not only the common law category of trespasser, but also the subcategory of "bare licensee". The courts in these six jurisdictions see no reason to refuse to social guests the same protection as that afforded invitees, placing little or no credence in the economic benefit theory which is the basis for the common law distinction. The same jurisdictions base their exclusion of trespassers and bare licensees on the lack of opportunity to take precautions or to warn—carving out exceptions once a trespasser or bare licensee is discovered.

We also note two jurisdictions which have abandoned the use of common law categories as to children.[5] Nearly all jurisdictions have, to some extent, carved out special standards for the treatment of children entrants.

The United States Supreme Court indicated its dissatisfaction with the use of common law categories, in refusing to apply the licensee-invitee distinction to an admi-

---

3. *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973) (recently expanded to include known trespassers in *Pridgen v. Boston Housing Authority,* 364 Mass. 696, 308 N.E.2d 467 (1974)); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959) (maritime torts); and 1975 Conn.Gen. Stat. § 52–557a. *See* England's Occupier's Liability Act of 1957 (5 and 6 Eliz. II, c. 31).

4. *Scheibel v. Hillis,* 531 S.W.2d 285 (Mo.1976) (eliminates all distinctions once an entrant's presence is known); *Memel v. Reimer,* 85 Wash.2d 685, 538 P.2d 517 (1975) (Washington has also expanded their invitee category.

*McKinnon v. Washington Fed. Savings & Loan Ass'n,* 68 Wash.2d 644, 414 P.2d 773 (1966)); *Hardin v. Harris,* 507 S.W.2d 172 (Ky.1974) (eliminates distinction between invitee and licensee once presence is known); *Wood v. Camp,* 284 So.2d 691 (Fla.1973); *Bramble v. Thompson,* 264 Md. 518, 287 A.2d 265 (1972); and *Preston v. Sleziak,* 16 Mich.App. 18, 167 N.W.2d 477 (1969). In addition, many States have modified the invitee-licensee distinctions through the use of exceptions similar to our own use of the "hidden peril" exception.

5. *Rosenau v. City of Estherville,* 199 N.W.2d 125 (Iowa 1972); *Louisville Trust Co. v. Nutting,* 437 S.W.2d 484 (Ky.1969).

ralty proceeding, when it said, in *Kermarec v. Compagnie Generale Transatlantique, supra,* 358 U.S. at 630–631, 79 S.Ct. at 410:

"The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'"

 The North Dakota Supreme Court, in the past, has recognized a difference in the duty owed to an invitee, a licensee, and a trespasser. *Werth v. Ashley Realty Company, supra.* An invitee is an individual who comes upon one's premises at the invitation, either express or implied, of the occupier of the premises for the transaction of business or for any other purpose beneficial to the occupier. The occupier of premises has a duty to make his premises reasonably safe for invitees. *Johanson v. Nash Finch Co.,* 216 N.W.2d 271 (N.D.1974). An occupier of premises owes a duty towards a licensee to refrain from willfully and wantonly injuring him or from knowingly letting him come upon a hidden

peril. *Werth v. Ashley Realty Company, supra; Sendelbach v. Grad, supra.* Social guests are included in the licensee category. *Sendelbach v. Grad, supra; Keeler v. Keeler,* 337 F.Supp. 824 (D.C.N.D.1972). An occupier of premises owes no duty to a trespasser other than to refrain from harming the trespasser in a willful and wanton manner until such time as the trespasser's presence in a place of danger becomes known, at which point the occupier's duty is to exercise ordinary care to avoid injuring him. *Dubs v. Northern Pac. Ry. Co.,* 50 N.D. 163, 195 N.W. 157 (1923). A special rule has been adopted as to trespassing children. *Mikkelson v. Risovi,* 141 N.W.2d 150 (N.D.1966).

Under previous North Dakota decisions, the common law distinctions were crucial for a plaintiff's case, because the degree of care owed to an entrant upon one's premises depended not on the jury's or the judge's evaluation of the occupier's conduct, but on whether the injured party happened to be, for example, a fuel deliveryman, a social guest, a farm laborer, a solicitor, or simply a curious child.

 In the instant case, rather than continue to predicate liability on the status of an entrant, we have decided to apply the ordinary principles of negligence to govern a landowner's conduct as to a licensee and an invitee. We do not change our rule as to trespassers.[6] An occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. Having determined the judicial necessity for abandoning the use of the common law categories of licensee and invitee in premises liability cases, we have determined to do so prospectively except as to the parties to this action. See *Kitto v.*

---

**6.** We note a significant difference between the status of one who trespasses on the property of another and one who enters under some color of right to do so. Exceptions to the trespasser category are few in number and are already well developed in North Dakota case law. *Mikkelson v. Risovi,* 141 N.W.2d 150 (N.D. 1966); *Dubs v. North Pac. Ry. Co.,* 50 N.D. 163, 195 N.W. 157 (1923).

*Minot Park District,* 224 N.W.2d 795, 804 (N.D.1974).

Our decision to abandon the common law approach to questions involving premises liability is based on the same factors relied upon in other jurisdictions, namely: the common law categories have no logical relationship to the exercise of reasonable care for the safety of others; human safety is of greater importance than a land occupier's unrestricted freedom; the common law distinctions are difficult to apply to specific factual situations; the use of the common law categories forecloses a jury from applying changing community standards to the duty owed by an occupier of premises to entrants thereon; the common law categories can mislead a jury; and the common law category distinctions and exceptions make the use of the common law categories complex, confusing, and inequitable.[7]

■ We do not now hold that land occupiers are now insurers of their premises, or that they must endure unreasonable burdens to maintain it—we hold only that the status of an entrant, a licensee, or an invitee is no longer solely determinative of the duty of care owed such entrant.

The circumstances of a visitor's entry upon another's premises will continue to have a direct relationship to the question of landowner liability. Foreseeability of a visitor's entry determines in part the likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury.

■ Applied to the facts of the instant case, the fact that the injury occurred on Mr. Coenen's property is certainly a relevant circumstance in assessing the reasonableness of his conduct. Mr. Coenen has a right to use his property and to develop it for his profit and enjoyment. As was stated by the New York Court of Appeals in *Scurti v. City of New York,* 40 N.Y.2d 433, 387 N.Y.S.2d 55, 59, 354 N.E.2d 794, 798 (1976):

> "That often means that he [the occupier of premises] must conduct dangerous activities or permit dangerous instruments and conditions to exist on the premises. However under those circumstances he must take reasonable measures to prevent injury to those whose presence on the property can reasonably be foreseen. Whether the threat is posed by a dangerous condition or a dangerous activity is of little significance in itself. It may have some bearing on the effort required to prevent the injury, but that depends on the facts of the particular case."

In the case at bar, the fact that Mr. Coenen lived in a rural area where dogs were commonly used in cattle and sheep ranching operations would definitely be important. Also, the dog's previous behaviour, as well as Mr. Coenen's opportunity to warn Mrs. O'Leary would be factors to be considered by the fact finder.[8] Thus, each of these several factors which formerly were considered decisive may now be usefully integrated into the general theory of tort liability so as to provide standards and guidelines in determining a land occupier's liability.

■ In the instant case, the question of reasonableness of the parties' conduct cannot be resolved as a matter of law. The fact finder must determine the extent of Mr. Coenen's knowledge of Rover's behavior patterns and the reasonableness of Mr. Coenen's response to such knowledge under the circumstances, as well as the extent to which Mrs. O'Leary's negligence contributed to her injury. *See* § 9–10–07, N.D.C.C.

---

7. As an example of this last complaint, in the instant case it is unclear whether the trial judge applied the "hidden peril" exception to the facts or whether he relied solely on the traditional "bare licensee" standard set out in his Conclusions of Law.

8. We question whether the posting of "beware of dog" signs alone would be sufficient for everyone who thinks there might be a chance that their dog might bite someone under some unforeseen circumstances, as was advocated by counsel. It should also be noted that the use of a warning sign, of itself, may not be determined to be a reasonable precaution when dealing with a dog with known vicious proclivities.

We therefore remand the case to the district court for proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.