2005 ND 93

**Kelly SMITH, by and through the Special Administrator Rhonda SMITH, Plaintiff and Appellant,**

v.

**Tony KULIG, Defendant and Appellee.**

No. 20040237.

Supreme Court of North Dakota.

May 17, 2005.

Michael Ward, Eaton, Van de Streek & Ward, Minot, N.D., for plaintiff and appellant.

James E. Nostdahl, Pringle & Herigstad, P.C., Minot, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Rhonda Smith, as the special administrator for the estate of her deceased husband, Kelly Smith, appealed from a dismissal of her wrongful death action against Tony Kulig. We hold the trial court's conclusion that Kelly Smith was a trespasser on Kulig's property and his death was not caused by willful or wanton conduct by Kulig is supported by the evidence, and we affirm.

I

[¶ 2] Kulig owns a four-story building in Minot with two commercial businesses on the main floor and four apartments leased on the second floor. The third and fourth floors are vacant. The building entrance is on the west side facing Main Street, and there is a separate door for residential tenants to enter the building. The door is kept locked at all times so that only tenants and invited guests may enter the premises, and all tenants have a key to the front door. Attached to the back east side of the building is a fire escape. Access to the fire escape can be gained through a second floor door onto a landing. At the bottom of the fire escape, a ladder is located approximately seven feet above the ground and, therefore, access from the ground is limited. Kulig instructed tenants of the building, including Michael Spotted Wolf, who rented one of the second floor apartments, they were not to use the fire escape for entering or exiting the building. It was to be used only in the case of an emergency. Kulig posted "no trespassing" signs on both sides of the second floor door leading to the fire escape landing, on the landing itself, and on the ladder between the landing and the ground.

[¶ 3] On July 22, 2000, Kelly Smith and Sonny Smith were visiting Spotted Wolf in his apartment in Kulig's building and were drinking most of the afternoon in the apartment. Sometime around 10:00 p.m., Kelly Smith visited a relative at another location in Minot. While Kelly Smith was visiting the relative, Sonny Smith phoned and invited Kelly Smith to come back to Spotted Wolf's apartment. Kelly Smith was later seen by a witness at a local bar around its closing time of 1:00 a.m. on the morning of July 23, 2000. No one saw Smith again until approximately 2:00 a.m., when his body was discovered lying in the alley beneath the fire escape on the east side of Kulig's apartment building.

[¶ 4] Rhonda Smith filed a wrongful death action against Kulig, alleging Kelly Smith was killed while walking on the fire escape when attachment bolts securing the fire escape "came out of the wall." She alleged the death was the result of Kulig's negligent failure to provide a safe environment and to keep the fire escape serviced in a safe manner. The case was tried to the court. Dr. John Smith testified the cause of Kelly Smith's death was "a fall from a balcony of a fire escape." Clint Wolf, an investigator with the Minot Police Department, testified that attachment bolts were missing from the fire escape, which allowed it to swing away from the wall, presumably causing Smith to fall to the street. The trial court found that Smith, while using the fire escape to enter or exit the building, was a trespasser to whom Kulig did not owe a duty other than to refrain from harming him in a willful or wanton manner. The court determined Kulig did not breach his duty to Smith, and the court dismissed the action with prejudice on its merits.

## II

[¶ 5] Rhonda Smith argues the trial court erred in finding Kelly Smith was a trespasser when he presumably fell off the fire escape of Kulig's building. Landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition under the circumstances. *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 (N.D.1996). However, a landowner's only duty to a trespasser is to refrain from harming the trespasser in a willful and wanton manner. *O'Leary v. Coenen*, 251 N.W.2d 746, 751 (N.D.1977). A finding of fact by the trial court will not be set aside on appeal unless it is clearly erroneous. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a defi-

nite and firm conviction a mistake has been made. *Buri v. Ramsey*, 2005 ND 65, ¶ 13, 693 N.W.2d 619. A determination of whether someone has committed a willful trespass is a finding of fact. *See Dixon v. McKenzie Co. Grazing Ass'n*, 2004 ND 40, ¶ 27, 675 N.W.2d 414.

[¶ 6] It is undisputed Kulig had informed tenants they and their guests were not entitled to use the fire escape to enter or exit the building. Although Kelly Smith may have been invited to Spotted Wolf's apartment as a guest, the evidence supports the trial court's finding Smith became a trespasser on Kulig's property when he attempted to enter or exit the building via the fire escape, in spite of the no trespass signs forbidding its usage in that manner when there was no emergency necessitating its use.

[¶ 7] The decision in *Terry v. Metzger*, 241 Neb. 795, 491 N.W.2d 50, 53 (1992), is instructive. In that case, a youth brought a negligence action against a possessor of land to recover for injuries that resulted when the roof of a cave on the land partially collapsed. The Nebraska Supreme Court affirmed the trial court's decision denying recovery on the ground that the land possessor had not been willfully or wantonly negligent. In reaching that decision, the court stated:

The district court's finding comports with the definition in *Malolepszy v. Central Market*, 143 Neb. 356, 360, 9 N.W.2d 474, 477 (1943), which states: "'The word "trespasser" is legally defined as a person who enters or remains upon premises in possession of another without a privilege to do so created by the possessor's consent, either express or implied.'"

The record indicates that Terry never received permission from Metzger to enter the property where the cave was

located. In addition, there was uncontroverted evidence that Metzger had placed "no trespassing" signs on the property on several occasions—thus negating any implied consent. In light of these facts, the district court's categorization of Terry as a trespasser was not clearly erroneous.

*Terry,* 491 N.W.2d at 53.

[¶ 8] Here, the trial court found the fire escape on the back side of Kulig's building contained no trespass signs, as did the doors leading to and from the fire escape at the second and third levels. The court also found that the ladder to the fire escape had a no trespassing sign mounted on it. These findings are supported by the evidence and are not clearly erroneous. The court found that Kelly Smith was a trespasser on the premises, because Smith did not have a right to use the fire escape as an entry or exit to the building and there was no emergency situation which would reasonably require him to have used it for that purpose. We agree with the Nebraska Supreme Court in *Terry* that the no trespassing signs on the property negated any implied consent upon which Kelly Smith could claim to have been a lawful occupant of the premises while using the fire escape in contravention of the warnings against such use. We, therefore, hold the trial court's finding Kelly Smith was a trespasser is not clearly erroneous.

## III

■ [¶ 9] Rhonda Smith asserts the trial court erred in concluding Kulig, as the owner of the building, only had a duty to avoid injuring Kelly Smith by willful or wanton conduct.

■ [¶ 10] For purposes of determining landowner liability for injury caused to occupants upon the land, this Court has eliminated the distinction between an invitee and a licencee, but has retained the distinction with regard to trespassers:

An occupier of premises owes no duty to a trespasser other than to refrain from harming the trespasser in a willful and wanton manner until such time as the trespasser's presence in a place of danger becomes known, at which point the occupier's duty is to exercise ordinary care to avoid injuring him.

*O'Leary,* 251 N.W.2d at 751. Thus, a landowner does not owe a duty to a trespasser other than to refrain from harming the trespasser in a willful and wanton manner. *See Sternberger,* 556 N.W.2d at 290 n. 2. We, therefore, conclude the court did not err in applying the willful and wanton conduct standard of liability under the circumstances of this case.

## IV

■ [¶ 11] Rhonda Smith argues the trial court's finding Tony Kulig did not harm Kelly Smith in a willful and wanton manner is clearly erroneous, because the undisputed evidence is that Kulig did not inspect the fire escape and consequently neither knew the attachment bolts were missing nor took any action to remedy that situation to make the fire escape safe for use.

■ [¶ 12] Determination of whether there is willful misconduct is generally considered a fact question to be determined by the trier of fact. *See Stokka v. Cass Co. Elec. Coop., Inc.,* 373 N.W.2d 911, 915 (N.D.1985). In *Van Ornum v. Otter Tail Power Co.,* 210 N.W.2d 188, 202 (N.D. 1973), this Court explained what it means to willfully or wantonly inflict injury upon someone:

In order to characterize an injury as having been willfully or wantonly inflicted, it is necessary to show knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury

to another; ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand; and the omission of such care and diligence to avert threatened danger when to an ordinary person it must be apparent that the result likely would prove disastrous to another.

Willful and wanton actions are "[r]eckless, heedless, malicious; characterized by extreme recklessness or foolhardiness; recklessly disregardful of the rights or safety of others or of consequences." *Nelson v. Gillette*, 1997 ND 205, ¶ 27, 571 N.W.2d 332 (citing *Black's Law Dictionary* 1582 (6th ed.1990)).

[¶ 13] With respect to trespassers, a landowner is not under any affirmative duty to give a trespasser warning of concealed perils, although, by the exercise of reasonable care, the owner might have discovered the defect or danger which caused the injury. *See Hart v. Kern*, 268 N.W.2d 136, 138 (N.D.1978); *Werth v. Ashley Realty Co.*, 199 N.W.2d 899, 900 (N.D.1972). The person in charge only owes a duty to not knowingly or willfully expose a trespasser to hidden danger or peril. *Id.* In *Werth*, a landowner was sued for injuries sustained by the plaintiff, who fell into the landowner's basement stairwell when a railing attached to the basement entrance of the building collapsed as the plaintiff leaned on it while talking to another person. *Werth*, 199 N.W.2d at 901. This Court held that when the defendant did not know of the dangerous condition of the railing and there was no showing of facts from which the defendant could have inferred that the railing was dangerous, the defendant was not liable to the plaintiff for the injuries sustained. *Werth*, 199 N.W.2d at 906–907. Similarly, in this case, there is no evidence that Kulig knew or had reason to know the fire escape was in a dangerous condition.

[¶ 14] Kelly Smith also argues Kulig's failure to inspect the fire escape and maintain it in a reasonably good condition constitutes willful and wanton misconduct, as a matter of law. When reasonable persons can draw but one conclusion, a question of fact becomes a matter of law for the court to decide. *Hurt v. Freeland*, 1999 ND 12, ¶ 9, 589 N.W.2d 551. Kulig testified he had discussions with fire department personnel, who acquiesced in allowing him to use "a thin wire" to discourage access to the fire escape from the second floor but which, at the same time, would allow someone to "step through" in the event they needed to use the fire escape in an emergency. Kulig testified he had recently used the fire escape several times to replace no trespass signs, and he had informed tenants that they and their guests were not to use the fire escape for building entry or exit. He also testified fire department inspections of the building did not disclose, to his knowledge, any safety problems with the fire escape:

Q   The yearly inspections by the Minot Fire Department basically included the whole building?

A   Yes.

Q   It included the fire escape?

A   Yes. I believe it did.

Q   If they made recommendations or requirements for anything that needed repair or maintenance you followed up and did it, didn't you?

A   Yes.

Q   Did you have any reason to believe in July of 2000 there was any problem with this fire escape, that it was dangerous in any way?

A   Not at all.

[¶ 15] Under these circumstances, we reject Smith's assertion reasonable persons could reach but one conclusion that Kulig's

actions were willful and wanton, as a matter of law. We hold the trial court's finding that Kulig did not harm Kelly Smith in a willful and wanton manner is not clearly erroneous. While Kulig's lack of knowledge may not have precluded his liability for injuries sustained by an occupant lawfully using the fire escape, it does insulate Kulig in this limited instance from liability toward Kelly Smith, who was merely a trespasser.

## V

[¶ 16]   Because the trial court's findings are not clearly erroneous, we affirm the judgment dismissing the wrongful death action with prejudice.

[¶ 17] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.